CAROLINE D. CIRAOLO
Acting Assistant Attorney General

W. CARL HANKLA
Trial Attorney, Tax Division
U.S. Dept. of Justice
PO Box 683
Washington, DC 20044
Telephone: (202) 307-6448
Fax: (202) 307-0054
w.carl.hankla@usdoj.gov
*Attorneys for the United States of America*

DANIEL G. BOGDEN
U.S. Attorney, District of Nevada
*Of Counsel*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| JAMES C. SEXTON JR. and ESQUIRE GROUP LLC,<br><br>Plaintiffs,<br><br>v.<br><br>KAREN L. HAWKINS, Director of Office of Professional Responsibility, Internal Revenue Service, Department of Treasury,<br><br>Defendant. | Civil No. 2:13-cv-00893-JCM-(VCF) |

## United States' Reply to Response to Motion for Summary Judgment

The United States, on behalf of the Director of the Office of Professional Responsibility, Internal Revenue Service, hereby replies to issues raised in plaintiff James C. Sexton Jr.'s Response (ECF Doc. 67) ("Response") to the United States' Motion for Summary Judgment

(ECF Doc. 64) ("U.S.' Summary Judgment Motion").[1] As to issues not discussed below, the United States relies on its moving papers (ECF Doc. 60-62, 64), on its Opposition (ECF Docs. 59-61) to Sexton's Motion for Judgment on the Pleadings (ECF Doc. 56), and on other relevant portions of the record cited below. The United States is entitled to judgment as a matter of law. The Court should deny the plaintiffs any relief and dismiss their complaint.

## Background

Following is a summary of the background of this case. For a more complete description, please see the United States' moving papers and previous briefs.

Sexton is a disbarred attorney. The IRS Office of Professional Responsibility ("OPR") suspended him from practice before the IRS. Sexton is allowed to prepare tax returns under the terms of his suspension. He currently is in the business of offering international tax advisory services, including tax return preparation, through Esquire Group.

Sexton and Esquire Group filed this action to challenge the regulatory jurisdiction asserted over them by OPR. Specifically, they objected to a letter from OPR to Sexton, in his capacity as President of Esquire Group, stating that OPR was pursuing a complaint from a member of the public into whether Sexton was violating the terms of his suspension. The letter requested the production of various documents and other information relevant to OPR's investigation (opened in reaction to the complaint received). A subsequent e-mail message from OPR to Sexton's counsel reduced the scope of information initially requested, based on

[1] The Response was filed by Sexton alone, but it is assumed to be on behalf of both Sexton and Esquire Group.

comments from Sexton's counsel to OPR during a series of conference calls. Instead of complying with the request, addressing it in a written response, or cooperating with OPR to further limit or otherwise modify the request or the extent of document production, Sexton and Esquire Group filed this suit for declaratory and injunctive relief.

The United States appeared on behalf of OPR and moved to dismiss for lack of subject-matter jurisdiction and failure to state a claim. The Court denied that motion, indicating during oral argument at a hearing on the motion that factual development was necessary before disposition of the case could occur. See ECF Doc. 40. The Court suggested that a motion for summary judgment would be appropriate at a later time. *Id*.

The United States filed an answer denying that the plaintiffs are entitled to any relief. After conclusion of a stay occasioned by the government's filing of a notice of interlocutory appeal, which was dismissed by stipulation, the government sought to begin discovery. The plaintiffs resisted. Rather than proceeding with discovery, the plaintiffs filed Sexton's Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.

The United States opposed Sexton's Motion for Judgment on the Pleadings and filed the U.S.' Motion for Summary Judgment. The summary judgment motion is supported by two declarations (one from a former client of the plaintiffs, Louise M. Kern) and accompanied by a Concise Statement of Material Facts under Local Rule 56-1. A Second Declaration of Louise M. Kern is filed in support of this Reply.

In their reply to the government's Opposition to Sexton's Motion for Judgment on the Pleadings, the plaintiffs insist that the Court should grant them relief without considering any

facts outside of the pleadings. They deny that summary judgment is appropriate. They did not file their own concise statement of material facts under LR 56-1. They did, however, file an affidavit by Sexton attempting to discredit Ms. Kern. It was her administrative complaint that gave rise to the OPR investigation at issue.

## Issues Presented

1. Whether the Court, as it previously determined, needs to consider facts outside of the pleadings in order to dispose of this case.

2. Whether the law, as applied to the government's undisputed facts, gives OPR regulatory authority over Sexton and Esquire Group.

3. Whether OPR's decision to investigate, and for purposes of the investigation to request information from, Sexton and Esquire Group was arbitrary or capricious under the Administrative Procedure Act.

## Discussion

### (1) The Court previously determined that it needs to consider facts outside the pleadings in order to dispose of this case.

According to the plaintiffs, "the issues presented here are questions of law that require no discovery or inquiry into the underlying facts of the Defendant's secret investigation."[2]

---

[2] The plaintiffs do not explain what they mean by "secret." They point to no evidence that OPR attempted to hide its investigation. OPR notified Sexton of the investigation in the letter attached as Exhibit B to the complaint.

Response, p. 3. But the United States does not accept the plaintiffs' version of the facts. Further, the Court decided early on that at least some factual development would be necessary.[3]

The Court offered its opinion about factual development at the November 2014 hearing on the United States' motion to dismiss. When the government argued that the Court did not need to look further than the face of the complaint to decide that the plaintiffs were not entitled to relief, the Court disagreed:

> THE COURT: You're [government counsel] raising—even as you raise the [legal] issues to me, you're raising facts about which the parties don't agree . . . [Y]ou'd have to develop what types of actions [Sexton] was engaged in. And he would have the opportunity to be able to say that's not what I was doing or here's what the law says I can do. I mean, why is that not a motion—appropriate for a motion for summary judgment?

ECF Doc. 40, p. 7. The Court indicated at the hearing that it would deny the motion in a subsequent order (and it did so). The parties were warned, "you should prepare for discovery to commence." *Id*. When the government later sought to begin discovery, the plaintiffs refused.

The United States thus followed the Court's lead in filing its motion for summary judgment. The facts in support of the motion are supported by the Kern Declaration, the Hankla Declaration, and the Second Kern Declaration. Fed. R. Civ. P. 56(c)(1)(A). See also Concise Statement of Material Facts. The material facts go to the question the Court identified at the oral argument over a year ago: "what types of actions [Sexton] was engaged in." ECF Doc., 40, p. 7.

---

[3] The need for further factual development post-pleadings precludes a judgment on the pleadings. See *Enron Oil Trading & Transp. Co. v. Walbrook Ins, Co.*, 132 F.3d 526, 529 (9th Cir. 1997) (noting that a district court will enter "a 'judgment on the pleadings when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law'") (quoting *George v. Pacific–CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir. 1996)).

Sexton and Esquire Group have chosen not to contest the government's facts, except to quibble with some of Ms. Kerns' testimony and to attempt to impugn her character.

It is unfortunate that Sexton chose to call Ms. Kern's honesty into question instead of attempting to rebut the material facts, but it tends to show why she initially wanted her administrative complaint to remain confidential. Sexton's attack is not only unfair but incorrect. Ms. Kern did not fire Sexton because she wanted to avoid paying the high tax bill that he supposedly told her that she would have to pay once he prepared her tax return correctly. To the contrary, he told her that she would have no income tax liability at all. This is evidenced by his June 15, 2012 e-mail to her informing Ms. Kern that he had filed an extension for her 2011 return and that she would not owe any taxes. Sexton stated in the e-mail:

> Louise:
>
> I just wanted to let you know that I filed your extension and it doesn't look like you will owe so there is no payment to make at this time.

Second Kern Declaration, Ex. 1. What made Ms. Kern upset was not the prospect of paying zero taxes but the realization that Sexton's fees, not including the $5,000 he solicited for written tax advice before even beginning to prepare her tax return, were nearly ten times more than what she had paid in the past for tax preparation services. *Id*. at ¶ 8. Coupled with her discovery of Sexton's disbarment as an attorney and his criminal record, Ms. Kern decided it was time for her and Sexton to part ways. *Id*. at ¶¶ 8-10.

The documents attached to Kern's declarations speak for themselves. Sexton misquoted Ms. Kern's September 12, 2012 e-mail by adding the word "liability" to the following passage, falsely trying to make it appear that she was firing Sexton because she believed she would owe

ten times the tax liability if he prepared her return. Footnote 9 of the Opposition states (bold print added):

> Kern's own declaration includes her September 12, 2012 email to Sexton in which she set forth her reasons for terminating his services. Among her reasons was that Sexton's advice would "raise the cost of our tax filing **liability** nearly 10 fold over our old accountant." (ECF 60, page 13 of 14). Sexton's advice certainly could not have had the potential for tax avoidance or evasion when his advice would have required Kern to pay more in U.S. taxes.

But it was Sexton's fees that were ten times higher than what Kern had been paying, not the tax liability (which Sexton had represented to her would be zero, as shown by Sexton's e-mail of June 15, 2012). Second Kern Declaration, ¶ 8; [First] Kern Declaration, Ex. C, p. 1. In addition, Kern was not opposed to amending her prior tax year's return(s) to disclose her ownership of her Austrian corporation; in fact, on April 11, 2012, she e-mailed her former tax return preparer and asked him to forward her 2010 income tax file to Sexton so that he could do whatever was necessary in that regard: "We [Kern and Sexton] think it will help him amend it to take care of the filing of the foreign corporation requirement and the other things we needed to change on that return." Second Kern Declaration, Ex. 2.

The content of Esquire's website, with references to "asset protection" services and tax-haven trusts in Nevis, reflects a potential for tax avoidance or evasion. See Hankla Declaration (Exhibits). The plaintiffs do not deny the authenticity of any of the government's exhibits.

In sum, the material facts necessary to dispose of this case are not in dispute.

///

///

///

**(2) The undisputed facts show that OPR has regulatory authority under Section 330 to investigate Sexton and Esquire Group.**

The plaintiffs do not directly address the government's interpretation of the scope of 31 U.S.C. § 330 ("Section 330"). That statute serves as the basis for OPR's regulatory jurisdiction. The regulations contained in Circular 230 were promulgated under Section 330. The plaintiffs continue to argue that *Loving v. IRS*, 742 F.3d 1013 (D.D.C. 2014), limits OPR's jurisdiction to "practitioners" who are in good standing (that is, eligible to practice before the IRS, and not suspended, as Sexton is) and who are representing clients in adversarial proceedings before the IRS. *Loving* is distinguishable, and the plaintiffs do not attempt to rebut the government's reasons why.

*Loving* dealt with individuals who did nothing but prepare tax returns for compensation, tax professionals who were not and never had been practitioners under Circular 230, and it dealt solely with the regulatory scheme applicable to mere tax return preparers, as evidenced by language in the opinion:

▪ "Until 2011, the IRS never interpreted the statute to give it authority to regulate tax-return preparers." 742 F.3d at 1021.

▪ "The new 2011 regulations require tax-return preparers to register with the IRS by paying a fee and passing a qualifying exam. . . . Each year after the initial registration, a tax-return preparer must pay an additional fee and complete at least 15 hours of continuing education classes." *Id*. at 1015 (citations omitted).

▪ "If we were to accept the IRS's interpretation of Section 330, the IRS would be empowered for the first time to regulate hundreds of thousands of individuals in the multi-billion dollar tax-preparation industry." *Id*. at 1021.

Nothing in *Loving* is obviously applicable to a suspended practitioner, and nothing in *Loving* addresses at all the giving of tax advice. The plaintiffs do not attempt to rebut the government's argument that *Loving* is inapplicable to this case.

The government's moving papers and previous papers discuss the scope of Section 330, why it applies to suspended practitioners as well as practitioners in good standing under Circular 230, and why the terms of subsection (d) apply to a tax advisor who is not representing a client before the IRS but may be selling them tax advice that the IRS believes has a potential for tax avoidance or evasion.[4] See also § 10.2(a)(4) of Circular 230 (31 C.F.R.), which expressly includes the rendering of written advice in the definition of "practice."

The government stands by that legal analysis and incorporates it by reference. In short, OPR has jurisdiction to determine whether practitioners or suspended practitioners are engaging in conduct prohibited by subsection (d) and the regulatory provisions that implement subsection (d), such as section 10.37 of Circular 230 ("Requirements for written advice") and section 10.51(a)(13) (prohibiting a practitioner from giving a "false opinion" or "engaging in a pattern of providing incompetent opinions on questions arising under the Federal tax laws"). Further, OPR has jurisdiction to determine whether Sexton is in violation of the terms of his

[4] Specifically, subsection (d) focuses on whether the advice is of a type the Secretary (Director of OPR via delegation) determines as having the potential for tax avoidance or evasion. Subsection (d) was recently re-designated subsection (e) as part of the amendment cited in the moving papers. To be consistent with the usage in the papers filed in this case before the amendment, the passage will continue to be cited as subsection (d).

suspension, including whether he is engaging in "disreputable" conduct.[5] 31 U.S.C. § 330(b)(2). The United States does not take issue in the instant litigation with the holding of *Loving* as far as it goes. That holding is inapplicable to the circumstances presented here, however.

The undisputed facts are sufficient to show that Sexton and Esquire Group *may* be engaging in conduct falling within subsection (d). (The plaintiffs deny that they have provided legal advice within the scope of subsection (d), but that is a disputed fact. It is one of the reasons for the investigation. The plaintiffs should not be allowed to thwart an official agency inquiry merely by gainsaying.) The government is not attempting by its Summary Judgment Motion to prove that the plaintiffs are in violation of Section 330, just that there is enough evidence for the inquiry, including requests for information (see Complaint, Ex. B), to proceed. Applying the law to the facts, the Court should conclude that the scope of OPR's regulatory jurisdiction is broad enough to allow for OPR's administrative process to move forward. The relief sought in the complaint is not warranted.

**(3) Whether OPR's decision to investigate Sexton and Esquire Group was arbitrary or capricious under the Administrative Procedure Act.**

Assuming that the Court has jurisdiction over this case under the Administrative Procedure Act (a conclusion that the Court made in denying the government's motion to dismiss, one with which the United States respectfully continues to disagree), the legal standard by which the agency's decisions are measured is "arbitrary or capricious." 5 U.S.C. § 706(2)(A). This

[5] It should be noted that a suspended practitioner can engage in improper conduct that has nothing to do with practice (imagine a fraud conviction) that might nonetheless warrant additional OPR action.

standard requires the Court to consider whether the agency "articulated a rational connection between the facts found and the choice made." *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife*, 273 F.3d 1229, 1236 (9th Cir. 2001). "Arbitrary or capricious" is a deferential standard of review under which the agency's action carries a presumption of regularity. See *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415–16, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Wolchuck v. Bowen*, 871 F.2d 869, 872 (9th Cir. 1989) ("The Secretary's application of regulations will be upheld unless arbitrary and capricious."). The Ninth Circuit has stated clearly, "Review under that standard is narrow; we will not substitute our judgment for the agency's." *Home Builders Ass'n of N. Cal. v. U.S. Fish & Wildlife Serv.*, 616 F.3d 983, 988 (9th Cir. 2010); *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Ins. Co.*, 483 U.S. 29, 43 (1983) (same).

OPR's decision to open an investigation and send Sexton and Esquire Group a request for information was neither arbitrary nor capricious. OPR received a complaint from a member of the public, Ms. Kern. That complaint was credible. OPR contacted Ms. Kern and obtained additional information and materials. An investigation appeared warranted based on the facts, Section 330, and OPR's interpretation of Section 330 and Circular 230. *United States v. Morton Salt Co.*, 338 U.S. 632, 643 (1950) ("When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law."); *Cf. Fleszar v. U.S. Dep't of Labor*, 598 F.3d 912, 914-15 (7th Cir. 2010) ("An agency must be allowed the authority to decide where its investigative and prosecutorial resources are best applied."). Given the facts presented, it cannot be said that

OPR's "final decision"[6] to proceed with issuing a request for information to Sexton and Esquire was arbitrary or capricious.[7]

[6] The government continues to maintain that OPR's decision to proceed with the investigation was not a final decision subject to APA review.

[7] Moreover, if the plaintiffs deemed OPR's request (even as modified) to be arbitrary or capricious, they could have simply refused to comply with it. The propriety of the request could have been addressed in the administrative process, as explained in the government's brief in support of its motion to dismiss, ECF Doc. 25, pages 11-13. After exhausting the administrative process, the plaintiffs would have the right to appeal an adverse decision to this Court under the APA. Or the controversy could be settled or conceded at the administrative stage without the need for district court litigation.

**Conclusion**

Based on the foregoing and on the other parts of the record incorporated herein, there is no genuine issue of material fact, and the United States is entitled to judgment as a matter of law. The plaintiffs' claims are without merit, and their complaint should be dismissed.

DATED this 2d day of February, 2016.

CAROLINE D. CIRAOLO
Acting Assistant Attorney General

*/s/ W. Carl Hankla*
W. CARL HANKLA
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, DC 20044
Telephone: (202) 307-6448
Fax: (202) 307-0054
w.carl.hankla@usdoj.gov
*Attorneys for the United States of America*

DANIEL G. BOGDEN
United States Attorney
District of Nevada
*Of Counsel*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that service on the following was made by the Court's CM/ECT system on this date:

DESA BALLARD
desab@desaballard.com
STEPHANIE WEISSENSTEIN
Stephanie@desaballard.com
*Attorneys for James C. Sexton Jr.*

PUOY K. PREMSRIRUT
puoy@brownlawlv.com
*Attorney for Esquire Group LLC*

SHAWN R. PEREZ
Shawn711@msn.com
*Attorney for James C. Sexton Jr.*

/s/ W. Carl Hankla
W. CARL HANKLA
Trial Attorney, Tax Division
U.S. Department of Justice