—2:13-cv-00893-RFB-VCF—

1                UNITED STATES DISTRICT COURT

2                   DISTRICT OF NEVADA

3

4  JAMES C. SEXTON, JR., and     )
    ESQUIRE GROUP, LLC,         )  Case No. 2:13-cv-00893-RFB-VCF

5                       )

6             Plaintiffs,  )  Las Vegas, Nevada
                       )  Friday, July 29, 2016

7       vs.               )  2:00 p.m.
                       )

8  KAREN L. HAWKINS, Director   )  MOTIONS HEARING
    of Office of Professional     )
    Responsibility, Internal      )

9  Revenue Service, Department
    of Treasury,

10

11                Defendant.
  _____

12

13

14            REPORTER'S TRANSCRIPT OF PROCEEDINGS

15

16         THE HONORABLE RICHARD F. BOULWARE, II
             UNITED STATES DISTRICT JUDGE

17

18

19

20  COURT REPORTER:        Patricia L. Ganci, RMR, CRR
                   United States District Court

21                   333 Las Vegas Boulevard South, Room 1334
                   Las Vegas, Nevada  89101

22

23

  Proceedings reported by machine shorthand, transcript produced
24  by computer-aided transcription.

25

———————2:13-cv-00893-RFB-VCF———————

1  APPEARANCES:

2  For James Sexton:        **DESA BALLARD, ESQ.**
                            BALLARD & WATSON
3                           Post Office Box 6338
                            West Columbia, SC 29171
4                           (803) 786-9299

5
   For the Defendant:       **W. CARL HANKLA, ESQ.**
6                           U.S. DEPARTMENT OF JUSTICE
                            PO Box 683
7                           Washington, D.C. 20044
                            (202) 307-0054
8
              LAS VEGAS, NEVADA; FRIDAY, JULY 29, 2016; 2:00 P.M.
9                           --oOo--

10                     P R O C E E D I N G S

11          THE COURT:  Please be seated.

12          COURTROOM ADMINISTRATOR:  Now calling James C. Sexton,

13  et al., versus Karen L. Hawkins, Case No. 2:13-cv-00893-RFB-VCF.

14  This is the time for the hearing for Docket No. 56, motion for

15  summary judgment, and Docket 64, motion for summary judgment.

16          Counsel, please note your appearances for the record.

17          MS. BALLARD:  Desa Ballard for the Plaintiff James C.

18  Sexton, Jr., Your Honor.

19          THE COURT:  Good morning, or good afternoon, I should

20  say.

21          MS. BALLARD:  Good afternoon.  Yes, sir.

22          MR. HANKLA:  Carl Hankla for the United States, Your

23  Honor.

24          THE COURT:  Good afternoon.

25          So we are here on the two motions as indicated.  I

—— 2:13-cv-00893-RFB-VCF ——

1  guess my one question that I had for the parties is to what

2  extent the parties agree that there needs to be no discovery or

3  further discovery in this case.  And the only reason why I say

4  that, Mr. Hankla, this probably goes more to your argument, is

5  that the crux of your argument really focuses on this idea of

6  what does it mean to practice in that catchall provision.  It

7  can be preparing tax returns.  It can be as a preparer, but it

8  can be as to practice.  And you make certain arguments about

9  Mr. Sexton in the context of practicing, or at least arguably

10  do, I think, or the provision of written advice.

11         And so I'm prepared potentially to take the case under

12  submission and rule after hearing argument today, but I want to

13  hear from both of you about this in the context of this case.

14  And, Mr. Hankla, I want to hear from you more explicitly in part

15  because I tend to think after Loving you have a more challenging

16  argument to make than the plaintiff does.  So why don't you come

17  up and first address that point, and then I will ask you some

18  other questions.

19         MR. HANKLA:  Thank you, Your Honor.  We were here on

20  this case a couple of years ago.

21         THE COURT:  Right.

22         MR. HANKLA:  Longer than I recalled.  And at that point

23  the government was arguing there's no jurisdiction over this

24  case.  You know, somebody can't just run into court and complain

25  if a professional responsibility organization wants to

─────────────2:13-cv-00893-RFB-VCF─────────────

1  investigate them.  And you decided, yes, you do have

2  jurisdiction and made a point during oral argument of saying

3  that there's factual development that needs to be made.  What

4  types of actions is Mr. Sexton engaging in?  And then, you know,

5  we decided -- you know, we took an appeal and decided not to

6  pursue it.  So we accepted the Court has jurisdiction.

7       And we tried to initiate discovery to determine what it

8  was exactly that Mr. Sexton was doing, because when we first

9  came before you, we had a confidential informant, you know, who

10 had made a complaint, an anonymous complaint, to the IRS Office

11 of Professional Responsibility.  And it was on that basis that

12 the office sent the letter to Mr. Sexton and Esquire Group, his

13 company, asking for documents related to his practice, which

14 precipitated this case for injunctive and declaratory relief.

15      Well, the government did attempt to, you know, get the

16 case moving after it came back from appeal, and we prepared a

17 proposed discovery plan.  And the plaintiffs were of the opinion

18 that no discovery was needed and wanted not to do it and filed

19 their motion for judgment on the pleadings, taking the position

20 that this case could be decided just based on the allegations of

21 the complaint, the response, the answer filed by the government,

22 and the Loving case, basically.

23      Well, we did some informal discovery.  We contacted the

24 confidential informant.  She agreed to provide information.  So

25 we opposed the motion for judgment on the pleadings and filed a

—2:13-cv-00893-RFB-VCF—

1  cross-motion for summary judgment based on the declaration from

2  the witness who was a former client or prospective client,

3  Louise Kern, and a declaration that I filed with attachments of

4  printouts from Mr. Sexton's website which we believe indicate

5  that there may -- there's a rational reason to investigate.  And

6  also earlier in the case we filed a declaration of Karen

7  Hawkins, who is the former Director of the Office of

8  Professional Responsibility and the nominal plaintiff in this

9  case, and that declaration also covers the facts upon which the

10 investigation was initiated.

11        Now, the Loving case, we believe --

12        THE COURT:  Okay.  But, Mr. Hankla, I want you to go

13 back to my question, which is this.  I don't know that we need

14 to have discovery in this case given that there is, I think,

15 more of a legal dispute between the parties as to what it means

16 to potentially practice or appear before the IRS such that this

17 case would be outside of the findings of Loving, but nonetheless

18 still fall within, I don't know if it's 330(e) or what section

19 it would be.

20        MR. HANKLA:  Yes.

21        THE COURT:  But my first initial question to you is

22 whether or not you think that there's any discovery that would

23 need to occur in the context of this case that wouldn't

24 necessarily in effect require Mr. Sexton to do what he didn't

25 want to do in the first place, which is provide certain

—2:13-cv-00893-RFB-VCF—

 1  information.  So part of the difficulty is just also about the

 2  discovery not basically swallowing up his objection to the

 3  conduct, right.

 4       And so to the extent that the Court would consider that

 5  potential, I just wanted you to comment on that.  I don't know

 6  that it's necessary in this case because I think that the

 7  parties aren't really disagreeing that much about the facts in

 8  this case.  They are just disagreeing about what the sections

 9  permit, but I just want to hear your thoughts initially on that

10  question on discovery.

11       MR. HANKLA:  Yes.  I'm sorry.  Our initial -- our

12  primary position is that, no, no discovery needs to be done.

13       THE COURT:  Okay.

14       MR. HANKLA:  We think we've got enough in the record.

15  And our fallback is that if you disagree with us, don't rule

16  against us on the law, then allow us to do more discovery, if

17  the discovery in the record isn't sufficient.  That's our

18  position.

19       THE COURT:  Okay.  Well, why don't we -- okay.  Then

20  why don't you -- if you want to, you can move onto then

21  explaining to me why Loving doesn't make your position, let's

22  just say, very challenging because I just want to find out how

23  it is that if he's not -- if you can't regulate tax preparers,

24  you can't regulate individuals in the context of providing

25  advice in the context of preparation of returns, if the

—————2:13-cv-00893-RFB-VCF—————

1  individual's suspended or not practicing before you, where is

2  this narrow window of this jurisdiction and what are the

3  parameters of that?  Because the other concern I have about the

4  arguments that you advance is it would seem to basically create

5  an exception that swallows the rule and how would we limit that.

6  So why don't you start with that, that question.

7        MR. HANKLA:  The plaintiffs believe that Loving

8  controls this case, and we think that Loving is distinguishable.

9  It does concern a similar legal issue, to wit, you know, what

10 authority, what jurisdiction does the Office of Professional

11 Responsibility have over the plaintiffs.  In Loving the

12 plaintiffs were professional return preparers, and that's all

13 they do, just prepare returns.  And the OPR asserted

14 jurisdiction over them and created this regulatory scheme where

15 they had to take an exam, pay annual dues, and take annual

16 continuing education.  The point being to try to create a more

17 professional, I guess, workforce.

18        But the Court said, No.  No.  The authority that the

19 Office of Professional Responsibility has derives from 31 U.S.C.

20 330, and they looked in particular at Subsection (a)(1) of that

21 statute and focussed on the language talking about representing

22 persons before the service.  And the Court reads in that, a tax

23 return preparer who has a storefront office is not representing

24 tax payers before the IRS.  There's no adversarial proceeding

25 there.  There's not even an audit.  You know, it is just

1  somebody filling out a form with their knowledge and filing it

2  electronically, perhaps.

3          We would say that Loving is distinguishable because

4  there, you know, the plaintiffs were attacking a new regulatory

5  scheme which for the first time -- by which for the first time

6  OPR was asserting jurisdiction over really thousands of

7  professionals that it had never asserted jurisdiction over

8  before.  The Court -- and I reread this decision this morning on

9  the way out here.  The Court looks at Section 330(a) and (b),

10  Subsection (b), and it is reprinted in the appendix to the case.

11  This is at 742 F.3d 1013.  And there's no -- in the appendix at

12  the end of Subsection (b) there's no, you know, ellipses or

13  anything indicating that there's more to the statute.  And there

14  is more to the statute.  There's a Subsection (c) which talks

15  about appraisers, you know, expert witnesses as to value, which

16  OPR has jurisdiction over.  They don't represent people in front

17  of the IRS.

18          And (d) talks about -- it says not -- it says -- I'm

19  paraphrasing.  It says...

20          THE COURT:  Oh, I have it in front of me.  I know what

21  it says.

22          MR. HANKLA:  You've got it in front of you.  It

23  basically says notwithstanding anything above, which would

24  include what the Loving Court relied upon, Subsection (a)(1),

25  *Nothing in this section shall be construed to limit the*

—2:13-cv-00893-RFB-VCF—

1   *authority of the Secretary of the Treasury to impose standards*

2   *applicable to the rendering of written advice with respect to*

3   *any entity, transaction plan or arrangement, or other plan or*

4   *arrangement, which is of a type which the Secretary determines*

5   *as having a potential for tax avoidance or evasion.*

6          And that Subsection (d) I would say is possibly the

7   best argument for distinguishing Loving.

8          THE COURT:  Let me ask you this question.  If that

9   were -- if the Court were to accept this as a catchall

10  provision, would then the Loving Court not have also had to have

11  found that tax preparers fell into this section?  They are

12  providing written advice frequently in the context of tax

13  preparation.  And wouldn't this catchall then completely negate

14  the decision in Loving?

15         MR. HANKLA:  I would -- I'm sorry.

16         THE COURT:  Just because, I mean, it seems to me that

17  this is very broad language, and I'll grant you that, but it

18  also seems to me that the Court in Loving was pretty clear about

19  saying, and I agree with it, that the Secretary's authority has

20  to be limited.  And it can't be a situation where we grant or we

21  understand the statute to grant this broad authority to regulate

22  professionals without some details and focus in the context of

23  that, and that's why they focus on the more specific language,

24  right, in (a) and (b).  But if I were to acknowledge or accept

25  your interpretation of (e), would that not swallow up Loving?

———————2:13-cv-00893-RFB-VCF———————

1        MR. HANKLA:  We would say no because written advice is

2   a term of art.  I mean, it's not -- preparing a return is not

3   written advice, you know, as the -- in the regulatory world.

4   Written advice is preparing a memorandum or an opinion, often a

5   legal opinion that goes along with a tax shelter or other

6   transaction that is designed to avoid or evade taxes.  And the

7   purpose of the opinion is that if the tax payer takes the risk

8   of entering into the transaction or doing the arrangement and

9   happens to get audited and the IRS disagrees with, you know, the

10  legitimacy of what's going on, the taxpayer can pull out this

11  written advice and say, Look, you know, I relied upon this when

12  I went into this transaction.  So don't penalize me.  I'll pay

13  the tax.  I'll pay the extra tax that you say I should have

14  paid, but don't sock me with a penalty.

15        And if you look before this section, I'm going to call

16  it Subsection (d).  It's currently Subsection (e).

17        THE COURT:  Right.

18        MR. HANKLA:  This was enacted I think in 2004, and the

19  legislative history to it said this is consistent with the

20  current law or the current regulatory scheme whereby the

21  Secretary has asserted jurisdiction through its regulations over

22  attorneys, generally they're attorneys, who write -- who provide

23  written advice.

24        THE COURT:  All right.  Mr. Sexton is not an attorney.

25        MR. HANKLA:  Mr. Sexton is not an attorney, but

—— 2:13-cv-00893-RFB-VCF ——

1  Subsection (d) is not limited to attorneys.

2       THE COURT:  Right.  But if you're saying it is a term

3  of art -- the only term of art for written advice that's not tax

4  preparers preparing written drafts of forms with comments is the

5  traditional tax opinion, which is written by lawyers because it

6  involves legal advice.  And there are laws in every state, as

7  far as I know, in the union which deal with the issue of and the

8  IRS can also deal with the issue of providing legal advice in

9  the context of not being licensed, but -- and so my question to

10  you is, why wouldn't this simply apply to lawyers who are giving

11  a tax opinion?  Why does this apply to anyone who decides to do

12  that?

13       Does this mean that if I were to write to my brother

14  and I say, This is what I think you should do on your taxes as a

15  nonlawyer that I would come under the jurisdiction under

16  Subsection (e) of OPR?

17       MR. HANKLA:  No, and that's --

18       THE COURT:  And that's my other question about the

19  limitation.  Okay.  It is a term of art.  What -- as you

20  understand that, what would be the parameters of that?  What

21  would be the universe of professionals, Mr. Hankla, to which

22  this would apply and be limited?

23       MR. HANKLA:  I don't know whether I can speak to that,

24  but if I could limit it -- first limit it to this case and say

25  Mr. Sexton is not an attorney, you know.  He's been disbarred.

―2:13-cv-00893-RFB-VCF―

1  He's not authorized to practice before this service because he's

2  been suspended, but as a suspended tax practitioner, we have

3  argued that OPR has inherent authority.

4       THE COURT:  And what case says that there's inherent

5  authority?

6       MR. HANKLA:  We've cited -- we've discussed several

7  cases in the legal field where bar associations or courts --

8       THE COURT:  Right, but Courts are very different

9  obviously than the agency.  Right.  And so the reason why I say

10  that is you're, I'm sure, familiar with in Loving and multiple

11  other decisions that talk about how federal agencies only have

12  that authority which is explicitly granted to them.  And in that

13  way they operate in the same way that Federal Courts do in terms

14  of being limited jurisdiction.  Right.  The Federal Courts

15  generally do not attribute to federal agencies power or

16  authority that is not explicitly detailed in statutes enacted by

17  Congress.  And particularly after Loving, I'm a little reluctant

18  to find that.  And I am just trying to figure out how to

19  interpret that statute because I agree that the language is

20  broad.  I agree that it appears to address the rendering of

21  written advice, but it does also appear that there's particular

22  regulations that seek to enact just that portion of the statute.

23       And so I'm just trying to ascertain to whom that would

24  apply.  And I know that you've taken the position that you would

25  have the authority over Mr. Sexton because he is a suspended

——2:13-cv-00893-RFB-VCF——

1  practitioner, but I think that would more probably be understood

2  under the previous sections, either (a) or (b), where there was

3  the original jurisdiction.  And your argument would be simply,

4  which I think it's been, is that it continues because he's a

5  suspended practitioner, but he is a practitioner in that

6  context.

7        But focusing back on (e), or (d) prior to December

8  2015, how am I to understand that in terms of the limitations

9  that exist in terms of this, quote, unquote, inherent power

10  associated with that that you're describing?

11        MR. HANKLA:  Okay.  If you look back up -- well,

12  looking back up at Subsection (b), it says, The Secretary may

13  suspend or disbar or censure a representative who is

14  disreputable.  Now, Mr. Sexton has been suspended.  He could be

15  disbarred.  OPR could take that further sanction against him, in

16  our view.  So that would illustrate the continuing jurisdiction

17  over Mr. Sexton as a suspended practitioner because he could

18  still be disbarred, he could be censured, or he could be

19  assessed with a monetary penalty under Subsection (b)(4).

20        But the inherent authority argument, I mean, I guess

21  you either buy it or you don't.  I mean, we got cases later on

22  in our brief, one from the Ninth Circuit regarding the SEC, Davy

23  versus SEC, saying that the Securities and Exchange Commission

24  had the authority to disbar an accountant from practice under

25  the general statutory delegation to make such rules and

1  regulations as may be necessary or appropriate to implement the

2  provisions of this chapter, another very broad set of language.

3          I can only speculate that the language in Subsection

4  (d) or (e) of 31 U.S.C. 330 was written broad for a reason.  It

5  doesn't talk about practitioner.  It doesn't talk about

6  representative.  It doesn't talk about attorneys or CPAs.  It

7  just says nothing in this section shall be construed to limit

8  the authority of the Secretary to impose standards applicable to

9  the rendering of written advice.  And it even uses the passive

10 voice there, you know, to avoid having to figure out who the

11 actors might be.

12         THE COURT:  Well, what I wonder is whether or not this

13 section applies to things like I guess it would be provisional

14 information like regarding tax shelters and the ways in which

15 one could provide information about tax shelters or talk about

16 them, but even then the problem really I have is that after

17 Loving, which so narrows this particular statute, it would seem

18 to me that any broad reading of this would necessarily conflict

19 with that.

20         But let me hear from -- thank you, Mr. Hankla.  Let me

21 hear from Ms., is it Ballard?  I want to make sure I'm saying it

22 right.

23         MS. BALLARD:  Yes, Your Honor.

24         THE COURT:  Ms. Ballard.

25         MR. HANKLA:  Thank you.

1          MS. BALLARD:  Thank you, Your Honor.

2          When we drafted the complaint in this action, it was

3   for a construction of the statute which was the same statute as

4   Loving, 13 U.S.C. 330.  And when we brought the action before

5   you, the question was did OPR have the right to require

6   Mr. Sexton to provide information and assist them in their

7   investigation.  We never said they couldn't do an investigation.

8          And most of their response to our motion for judgment

9   on the pleadings and most of their motion for summary judgment

10   focuses on why they decided to do an investigation which we --

11   we contend has nothing to do with this.  After the appeal was

12   withdrawn and we came back to Your Honor's court, we began

13   talking about a discovery schedule, and Mr. Hankla told me that

14   they intended to take depositions of people in Europe and other

15   places.  And I said, Whoa.  Wait a minute.  I thought we had a

16   legal question presented here, and that was the reason we

17   brought the motion for judgment on the pleadings because I think

18   it is simply the legal questions that Your Honor set forth in

19   your order.

20          When your order denied the government's motion to

21   dismiss, you said there were three questions presented by our

22   complaint:  whether Sexton is a practitioner before the IRS,

23   which would subject him to the jurisdiction of the OPR; whether

24   IRS's regulatory authority would include a former practitioner;

25   and whether the giving of tax advice generally is falling within

—2:13-cv-00893-RFB-VCF—

1   the scope of something that the OPR can regulate.

2        And my analysis of it began with exactly the point that

3   Your Honor made earlier, which is an agency has only such

4   authority as is given to it by the General -- by the -- I'm

5   sorry, not the General Assembly, by Congress.  I'm a South

6   Carolina lawyer.  We have a General Assembly in our state.  I'm

7   sorry, Your Honor.

8        Congress defined what the Secretary could do in 330 and

9   Congress defined that the Secretary could regulate people who

10  practice before the IRS, but by definition, once someone resigns

11  or someone retires or someone is suspended, they are no longer a

12  practitioner.  And the importance of that is we're not

13  suggesting they can't do whatever investigation they want to do.

14  Our point is he's not a practitioner who can be forced to give

15  them information --

16        THE COURT:  Right.

17        MS. BALLARD:  -- to assist them with their

18  investigation.  So we necessarily --

19        THE COURT:  The case is really about whether or not he

20  even has to respond to these letters.

21        MS. BALLARD:  Exactly.

22        THE COURT:  Which had sort of had this vaguely

23  threatening language about, You have to do this.  Otherwise,

24  there are consequences.  We're not really going to say what they

25  are, but there are consequences, and whether or not they could

1    simply compel compliance with their investigation.

2           MS. BALLARD:  And, Your Honor, I went back after we

3    discussed -- Mr. Hankla and I discussed the scheduling order for

4    discovery and I realized how broadly they were viewing it.  And

5    I looked at the initial letter that was sent from OPR to

6    Mr. Sexton, which is Exhibit B to our complaint.  And it

7    specifically says in the first sentence that they have received

8    a report of suspected practitioner misconduct.  And then when I

9    got involved and was communicating with them, I asked, Under

10   what authority can you require him to respond to this production

11   request?  They again said, Because he's a practitioner.  And

12   that's Exhibit C to our complaint.  Which led us to the

13   question, how can he be a practitioner if they've suspended him?

14          And, Your Honor, with all due respect to Mr. Hankla, we

15   have a wonderful working relationship, when I got the response

16   to the motion for judgment on the pleadings and it was

17   accompanied of course by the motion for summary judgment, it was

18   a little like Alice in Wonderland because I was like, Where am I

19   going?  Why are we talking about what this lady in Austria had

20   to say?

21          The questions that we've brought to the Court for

22   answer don't involve what Mr. Sexton does or doesn't do.  It

23   involves what OPR has authority to do and not do.

24          THE COURT:  Well, more specifically, it involves what

25   OPR has the authority to require him to do.

1          MS. BALLARD:  Exactly, Your Honor.

2          THE COURT:  I mean, not just -- because this case isn't

3     even really so explicitly about him providing the advice.  It

4     really arose out of the context of this letter which seeks to

5     compel compliance.  And, I mean, I understand it in that narrow

6     context because there really isn't -- the letters aren't really

7     a directive to say, You can no longer give written advice.  They

8     actually don't say that.  They basically require some compliance

9     with these requests.

10          And so to the extent that my formulation of this had to

11     deal with the issue of providing advice, it was in the context

12     of someone who provides that advice, but not necessarily in

13     their ability to reach out and tell someone how to provide that

14     advice.  And I say that in part because one of the things you've

15     requested through your relief is that, you know, basically

16     telling OPR, the IRS, that you can't regulate people in the

17     provision of advice.

18          MS. BALLARD:  Exactly.

19          THE COURT:  But I expect that my ruling in this case,

20     to the extent that I ruled in your favor, would be more narrow.

21     It would be if someone is no longer a practitioner, you cannot

22     compel them to cooperate with your investigation.  I don't

23     know -- and you can tell me.  This is a slightly different

24     question to you than I asked Mr. Hankla.  I don't know that I

25     need to reach the issue of the regulation of or the --

─────────2:13-cv-00893-RFB-VCF─────────

1          MS. BALLARD:  Providing.

2          THE COURT:  -- providing of advice, the regulation of

3   the provision of the advice in this case, except to the extent

4   I'd imagine that what you are going to say to me is if I don't

5   include that, what they are going to do is come back and say,

6   Well, we can't tell you or require you to provide information,

7   but we can tell you how to provide it.  And so I would imagine

8   that's the reason why you would request something beyond what's

9   requested in the letters.  Is that right?

10          MS. BALLARD:  Partly, Your Honor.  The reason we asked

11  that question, whether the giving of tax advice generally falls

12  within the regulatory authority of OPR, is because OPR seemed to

13  be saying that.  They seemed to be saying that, We really don't

14  care who you are.  If you are giving legal -- excuse me.  If you

15  are giving tax advice, you are a practitioner.

16          THE COURT:  I guess my question to you is, I don't have

17  a case here before me where they are saying to him, You cannot

18  provide advice.

19          MS. BALLARD:  Correct.

20          THE COURT:  And so then I'm reluctant to issue, to the

21  extent I rule in your favor, a ruling that says to them, You

22  cannot regulate him in the context of the provision of advice.

23  Now, certainly, if I were to accept the argument you've

24  presented in the context of the reasoning of Loving, it would

25  seem to me that that's implied in what I might rule, but I don't

1   actually have that factual scenario before me in the context of

2   what you have sought in terms of relief, do I?

3           MS. BALLARD:  Only insofar as OPR was saying to my

4   client, We know you're a suspended practitioner, but we still

5   have the authority over you to compel you to give us this

6   information.  But when you look back at the letters that they

7   sent, they always used the practitioner language.

8           So answering the first question, I think as much as I'd

9   like to have the answer to the other, I think answering the

10  first question answers the necessary point that's presented

11  here, which is the compulsory factor that the OPR was attempting

12  to invoke over Mr. Sexton.

13          They can and they do often investigate people who are

14  giving tax advice that has the potential for tax avoidance or

15  evasion, and they bring lawsuits against those people.

16          THE COURT:  Right.  They can enjoin them or bring a

17  criminal case.

18          MS. BALLARD:  Yes.  When we were here initially to

19  discuss the jurisdictional issues, we actually discussed that.

20  And the idea was, Well, they certainly can go out and gather

21  whatever information they want to gather.

22          THE COURT:  They can issue subpoenas.  They can do --

23          MS. BALLARD:  Whatever they want.

24          THE COURT:  Bolster that theory.

25          MS. BALLARD:  But they can't make Mr. Sexton who is no

─────────2:13-cv-00893-RFB-VCF─────────

1  longer a practitioner and no longer has -- is no longer under

2  their umbrella compel him to provide things to them to assist in

3  their investigation.  And I think we got a little off topic with

4  the motion for summary judgment because I think the defendant

5  was saying to you, Well, this is why we're investigating him.

6  And I think that's beside the point.  I don't think it matters

7  why they're investigating him.  I think for purposes of the

8  questions that we've brought to Your Honor, it doesn't matter

9  what Mr. Sexton does.  It doesn't matter what he has done.  It

10  doesn't matter what he might do in the future.  It doesn't

11  matter what he holds himself out as.  It doesn't matter what a

12  third party in Austria might have thought about him.  The

13  question is can OPR make him comply.

14         THE COURT:  Right.

15         MS. BALLARD:  And so the first question is where did

16  they get authority to make him comply, and the only place it

17  could be is in 330.

18         Now, Subsection (d) that Mr. Hankla mentioned to you

19  about the tax advice giving a potential for tax avoidance or

20  evasion, that section says nothing prevents the Secretary from

21  imposing standards about that.

22         THE COURT:  But not regulating.

23         MS. BALLARD:  Not regulating.  And maybe the Secretary

24  will at some point impose standards applicable to the rendering

25  of written tax advice with respect to blah, blah, blah, but they

———— 2:13-cv-00893-RFB-VCF ————

1   haven't done that yet.

2          THE COURT:  Right.

3          MS. BALLARD:  And it certainly doesn't apply to

4   Mr. Sexton.  The question is, because he used to be there --

5          THE COURT:  Right.

6          MS. BALLARD:  -- can they make him participate?  And

7   most of my practice -- I think I told Your Honor when we were

8   here two years ago, most of my practice is representing lawyers

9   in disciplinary proceedings.  And we all know in the Rules of

10  Professional Conduct 8.1 requires us as lawyers to cooperate

11  with disciplinary authorities.  That arises out of the inherent

12  authority of the Courts.

13          Mr. Hankla's brief repeatedly uses language such as

14  inherent.  That's on page 14, 15, 13, and 17 of his brief.  And

15  then he argues that the only, quote, reasonable presumption is

16  that Congress intended for OPR to still have the authority once

17  someone was no longer a practitioner to still exercise

18  jurisdiction over them.  They go onto say that nothing indicates

19  that that authority has been taken away from them.  That's not

20  the question.

21          The question is do they have the authority under the

22  existing statute, and that's the only question.  And I suppose I

23  have not properly articulated it at all before Mr. Hankla and I

24  were trying do the discovery plan.  And I was, Why are we going

25  to Europe to take depositions when we're presenting only legal

1   questions?  And that's why I filed the motion because I don't

2   think the Court needs any discovery, to answer your first

3   question.  I don't think the Court needs any discovery at all to

4   answer that question.  You don't need to know where Mr. Sexton

5   is today or what he's doing today or what he might have done

6   yesterday.  None of those things are relevant.  This is a

7   statutory construction issue, Your Honor.

8          And I have not asked you -- and Your Honor made it

9   clear that you understood that in your original order.  We are

10   not asking to enjoin any investigation they might want to

11   undertake.  They should have at it.

12          THE COURT:  Right.

13          MS. BALLARD:  I just don't want my client to be

14   compelled to have to give information.  What I was concerned

15   about when we filed the action and we started discussing the

16   discovery plan, I was concerned that what I might have happen is

17   the mandatory investigation cooperation that they wanted

18   Mr. Sexton to provide, they might try to get it through

19   discovery.

20          THE COURT:  Which is what I said earlier.

21          MS. BALLARD:  They might try to say, Okay.  Well, let's

22   ask you this.  What do you do for Esquire?  And how many people

23   do you do income tax returns for?  And give me every copy of tax

24   returns that you have done.  So I was alert for that concern.  I

25   didn't want them to kind of come in the back door and use this

1   case to do what they were trying to do initially.  That's what

2   caused me to ask Your Honor to look at this as a matter of law.

3   And only when I was forced really to focus on that did I

4   realize, No, we probably don't need any discovery.  And we

5   talked about possibly needing discovery at the initial hearing.

6   I certainly hadn't thought that far ahead.  I just knew that I

7   had to be prepared to prevent compulsion by OPR during this

8   litigation.

9          Fortunately, the request from Your Honor that we come

10  up with a discovery plan tweaked my thinking a little bit and

11  helped me focus on the fact that this really is just a legal

12  issue.

13         And as far as Loving is concerned, Loving is directly

14  on point because Loving construes Section 330 to say, Oh, no.

15  IRS/OPR, you're given certain authority to regulate people, but

16  unless you're given that authority, you can't go outside it.

17  And that what they were trying to do in Loving was to regulate,

18  as Mr. Hankla said, storefront tax preparers.  And maybe they

19  can regulate law professors and maybe they can regulate people

20  at cocktail parties who talk about taxes.  Maybe they can do

21  that, but I haven't seen the regulations yet that have been

22  enacted to do that.

23         So our position is that we've presented only legal

24  questions to Your Honor and we'd love you to answer all of the

25  legal questions that we've presented, but we certainly don't

1   need to engage in discovery.

2          And the last point I wanted to make is under Rule 56 --

3   when I was looking about how to respond to the motion for

4   summary judgment, I went back.  I have a colleague who says, you

5   know, I did the unforgivable.  I read the law.  I went back and

6   looked at Rule 56, and Rule 56 says that you can make a motion

7   for summary judgment as to a claim or as to a defense or as to

8   part of a claim or part of a defense.  And the motion for

9   summary judgment by the government doesn't address any of our

10  claims, and it doesn't address any of their defenses.  So it's

11  inappropriate to rule on oranges when apples are what we've

12  brought to Your Honor in the complaint.

13         The only other -- last point I would like to make is

14  that the complaint sets forth in specific paragraphs the

15  questions that we want answered and with -- by including the

16  letters from OPR first to Mr. Sexton and then to myself, the

17  Court has the basis upon which OPR thinks it has jurisdiction.

18  So I think we're there.  I think the question just needs to be

19  answered.

20         THE COURT:  Thank you.

21         MS. BALLARD:  Thank you, Your Honor.

22         THE COURT:  Mr. Hankla, anything further to add?  And

23  the only thing I want you to respond to is the Court in deciding

24  the motion for judgment on the pleadings will consider the

25  letters that are attached, and I don't know that you've actually

1   in any way challenged the authenticity or accuracy of them in

2   the context of them having been sent by OPR or those letters

3   representing OPR's position as to its authority in this case.  I

4   think you've also argued in your briefs that there's additional

5   authority beyond that that's been identified in the letters, but

6   the Court was going to actually, as they are attached to the

7   complaint, consider the letters in deciding the motion for

8   judgment on the pleadings.

9           MR. HANKLA:  No objection to that.

10          THE COURT:  Okay.

11          MR. HANKLA:  No objection to that, Your Honor.

12          THE COURT:  Because it does seem to me that this is

13  truly a legal issue in terms of first identifying -- and neither

14  one of you are disputing, for example, the fact that Mr. Sexton

15  is a disbarred or no longer practicing attorney who is

16  suspended -- a suspended practitioner before the IRS.  It

17  doesn't appear that there's any disagreement about that, and

18  that in fact he was suspended at the time that the letters were

19  sent to him.  Right.  There's no agreement about that.  Is that

20  right?

21          MR. HANKLA:  Correct, correct.

22          THE COURT:  Okay.  And it seems to me that as a

23  threshold matter in terms of deciding about discovery and the

24  case moving forward, I could potentially grant the defendant's

25  motion for summary judgment and then deny the plaintiff's

─── 2:13-cv-00893-RFB-VCF ───

1  motion, I could grant the plaintiff's motion for judgment on the

2  pleadings and then deny the defendant's motions, or I could deny

3  both motions and order that the discovery proceed on some

4  limited basis on whatever issue I think there needs to be

5  discovery on.  But it seems to me that those are the three

6  options here.  Would you agree with that?

7          MR. HANKLA:  Yes, Your Honor.

8          THE COURT:  Okay.  So I will give you a final

9  opportunity to respond, Mr. Hankla, to anything that Ms. Ballard

10  has argued at this point.

11          MR. HANKLA:  Well, I am sure you've looked at our

12  briefs and will look at them again.  I just want to make the

13  point that this is not a case where OPR pulled somebody out of a

14  cocktail party who was talking tax advice to his neighbor.  It's

15  not somebody on the street --

16          THE COURT:  And let me stop you, Mr. Hankla, because I

17  agree with you that that's the case and I think that's probably

18  why you put this information in there, for the Court to have

19  some faith that this is not, for lack of a better term, a sort

20  of targeting of Mr. Sexton for inappropriate reasons.  It still

21  leaves with me with the separate question, though, that if I

22  accept your interpretation of the statute, are there limits to

23  that and is there authority for that.

24          So, I mean, I will just tell you that I don't know that

25  there's anything in the record before me that would indicate

—2:13-cv-00893-RFB-VCF—

1  that there's a bad faith attempt on the part of OPR to target

2  Mr. Sexton and nor do I need to reach that issue.  And I don't

3  think Ms. Ballard is asking me to reach that issue.

4        I think that the issue is much more narrow just in the

5  context of the interpretation of this statute, particularly

6  after Loving, what is the area of regulation of individuals in

7  the context of the provision of tax advice that still exists for

8  OPR outside of practitioners or other individuals who are

9  identified in 330(a).

10       MR. HANKLA:  Well, Mr. Sexton is a suspended

11 practitioner who is indisputably in the business of offering --

12 of giving -- of selling tax advice for money.

13       THE COURT:  Right.  But as you recognize, Loving says

14 providing tax advice for money doesn't necessarily create

15 jurisdiction of OPR.  Otherwise, tax preparers would be able to

16 be regulated.  Right.  The question is, how is Mr. Loving

17 different from that group?

18       MR. HANKLA:  Because Loving doesn't talk about

19 Subsection (d) for one thing.  It doesn't even -- somebody

20 reading the opinion wouldn't even know that there was a

21 Subsection (c) and a Subsection (d) in the statute.

22       THE COURT:  Right, but Ms. Ballard raises the point,

23 which is not an insignificant one, which (d) or (e), however you

24 want to refer to it, doesn't say regulate.  It says impose

25 standards.  And the IRS offers standards for all sorts of things

1  where it doesn't actually regulate the particular area in a tax

2  context.  There are a whole series, as I'm sure you know, of

3  publications issued by the IRS as it relates to how to

4  understand or best practice as related to the calculation of

5  taxes, understanding tax shelters.  Those things are standards,

6  but they are not necessarily always associated with regulation.

7  So my question to you is, accepting what you say is true about

8  Loving, is it not significant that Subsection (d) or (e) refers

9  to standards and not regulation?

10        MR. HANKLA:  I would refer it -- in order to construe

11  what Subsection (d) means, I wish I could put my -- point my

12  finger on the cite, but (d) was enacted in 2004 and the

13  legislative history indicates or said that it was intended to

14  essentially bless OPR's practice of regulating the -- those who

15  prepare written advice.  So I would as authority -- I mean,

16  you're not acting in a vacuum.  I would look back at that

17  legislative --

18        THE COURT:  But if that's the case, Mr. Hankla, then

19  what that means is that Loving necessarily included discussion

20  of (d) as well in discussing, or concerning the entire statutory

21  scheme, right.  Otherwise, it can't be the case that Loving

22  basically is saying, These two sections don't regulate it, but

23  this other section potentially would allow them to regulate tax

24  preparers.  You're saying that -- if I accept your argument,

25  what it would mean is that the IRS/OPR could come back and say,

—————— 2:13-cv-00893-RFB-VCF ——————

 1   Well, we might not have been able to regulate tax preparers

 2   under (a) or (b), but we certainly can under (d) or (e).  Is

 3   that what you're saying?

 4           MR. HANKLA:  If I understand what you're saying...

 5           THE COURT:  I think you're arguing to me, basically,

 6   that because Loving doesn't mention Subsection (c) and (d), the

 7   Loving decision doesn't extend to them.  And, therefore, it's

 8   possible that Section (d), or (e) as it is now understood, could

 9   be used as a basis for authorizing OPR regulation of tax

10   preparers.

11           MR. HANKLA:  No.

12           THE COURT:  Okay.

13           MR. HANKLA:  No, no.  Because they don't provide

14   written advice.

15           THE COURT:  But they do actually provide written

16   advice.  Let me just say this.  It depends upon -- if you're

17   saying written advice is only in the context a term of art of an

18   opinion, tax preparers absolutely provide, and this Court has

19   seen it, documents to individuals that contain suggestions about

20   how forms should be filled out that have their letterhead on it,

21   and the Court has seen these cases.  That that's a common part

22   of tax preparers.  It's hard for me to imagine when a tax -- in

23   the context of Loving they only meant tax preparers who only

24   just filled out forms and never had anything on the forms that

25   would in any way comment on the taxes because almost all tax

—2:13-cv-00893-RFB-VCF—

1   preparers have some accompanying documentation.

2         It seems to me what you are saying is that written

3   advice in this context means a specific legal or tax opinion

4   such as in a tax shelter situation.  Is that right?

5         MR. HANKLA:  Well, I know that's what it would -- I

6   know that's what it was intended to address and what -- and

7   that's the way the service has interpreted it through its

8   regulations and the administrative decisions attached to my

9   declaration.

10        THE COURT:  Well, I'm going to go back and take a look

11  at this particular subsection and then render my decision.  I'm

12  going to take the motions under submission.  Is there anything

13  else that we need to do today, Mr. Hankla?

14        MS. BALLARD:  Nothing from the plaintiff, Your Honor.

15        MR. HANKLA:  Nothing from the government, Your Honor.

16  Thank you very much.

17        THE COURT:  Thank you.  We're adjourned.

18        MS. BALLARD:  Thank you very much.

19        (Whereupon the proceedings concluded at 3:32 p.m.)

20

21

22

23

24

25

2:13-cv-00893-RFB-VCF

--oOo--

COURT REPORTER'S CERTIFICATE


     I, PATRICIA L. GANCI, Official Court Reporter, United
States District Court, District of Nevada, Las Vegas, Nevada,
certify that the foregoing is a correct transcript from the
record of proceedings in the above-entitled matter.


Date:  August 9, 2016.

                                   /s/ **Patricia L. Ganci**

                                   Patricia L. Ganci, RMR, CRR

                                   CCR #937