UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JAMES C. SEXTON JR. AND ESQUIRE GROUP LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>KAREN L. HAWKINS, Director of Office Of Professional Responsibility, Internal Revenue Service, Department of Treasure,<br><br>    Defendant. | Case No. 2:13-cv-00893-RFB-VCF<br><br>**ORDER** |

## I.   INTRODUCTION

Before the Court are Plaintiff James Sexton's Motion for Judgment on the Pleadings (ECF No. 56) and Defendant Karen Hawkins's Motion for Summary Judgment (ECF No. 59, 64). This case arises from an investigation by the Office of Professional Responsibility (OPR) for the Internal Revenue Service (IRS) of Plaintiff James Sexton and his company, Plaintiff Esquire Group LLC, regarding his status as a practitioner for tax purposes. Compl. at 4.

## II.   BACKGROUND

### A.   Factual Allegations, Admitted by Defendant[1]

The Court finds the following facts to be undisputed. This case arises from an investigation by the Office of Professional Responsibility (OPR) for the Internal Revenue Service (IRS) of

---

[1] The Court draws upon Plaintiff's Complaint (ECF No. 1), Defendant's Answer (ECF No. 45), and Defendant's Statement of Material Facts (ECF No. 62) as well as oral argument before the Court in determining the undisputed facts.

Plaintiff regarding his status as a practitioner for tax purposes. Plaintiff was previously a lawyer barred in South Carolina. Id. at ¶ 8. In 2005, Sexton pleaded guilty to four counts of mail fraud and one count of money laundering. Id. at ¶ 9. Sexton was subsequently disbarred in South Carolina and then suspended from practicing before the IRS by OPR in 2008. Id. at ¶ 10. He has not challenged this suspension. Id. at ¶ 10.

Prior to and during his suspension, Sexton has offered professional tax services as president of Esquire Group, LLC ("Esquire"). Id. at ¶ 13. Sexton assists with the preparation of tax returns for individual clients of Esquire. Id. at ¶ 14. He also performs various other duties within the scope of his employment with Esquire, including management, marketing, and client relations. Id. at ¶ 13. In September 2012, OPR received a complaint from Louise M. Kern, a former client of Sexton and Esquire. Defs. Resp. to MSJ, ECF No. 59, 5. Sexton assisted Kern in preparing her tax returns for 2010 and 2011, and offered to send her a written memorandum analyzing her options regarding her business' tax obligations. Id. at 7. Before accepting Sexton's offer, Kern found out about Sexton's disbarment, and fired him in an email on September 12, 2012. Id. at 9. Following Kern's Complaint, OPR initiated an investigation of whether Sexton was violating his suspension from practicing before the IRS. Id.

In October 2012 OPR wrote a letter to the Supreme Court of South Carolina seeking information regarding Sexton's education and the date upon which he first became licensed to practice law in South Carolina. Id. at ¶ 18. On or about February 25, 2013, OPR sent a request to Sexton, as president of Esquire, for information related to an investigation of alleged unauthorized practice by Sexton during his suspension. Id. at ¶ 23. The letter's reference line read, "Re: Suspected Practitioner Misconduct Under Circular 230", and represented the onset of an OPR investigation. (ECF 1-1). Citing section 10.20(a)(3) of Treasury Department Circular No. 230 (Regulations Governing Practice before the Internal Revenue Service) as the authority for its request, OPR requested a wide range of information from Sexton, alleging that this information was "required under section 10.2(a)(3)". This included a request for detailed information on Sexton's educational background; documents related to the incorporation of Esquire Group and its entity structure; a list of all members, employees, and independent contractors of Esquire Group

from the date of incorporation to the present; "any and all documents…and all information related to Esquire Group's business plan"; and an array of detailed requests regarding documents provided to clients "relating to the preparation, the filing, and/or the submission of the clients' Federal and State tax returns."

Sexton requested OPR to limit the scope of its original request for information. OPR amended its request for information in an e-mail sent on April 12, 2013. Id. at ¶ 29. Sexton's Complaint in this case seeks to determine whether Defendants have jurisdiction or authority over him, such that they can compel such disclosures from him, under 31 U.S.C. § 330.

Sexton seeks the following relief:

1) A declaratory judgment by the Court that Sexton is not a practitioner as defined by federal law and that Defendants lack statutory authority to enact, promulgate or enforce demands or authority over him and/or his employer Esquire as a result of Sexton's activities.

2) A declaratory judgment by the Court that Defendants and their agents are prohibited from regulating the providing of tax advice generally, except as specifically provided by statute and conferred upon them by Congress.

3) A permanent injunction prohibiting Defendants or their agents from seeking to enforce Section 10.20 of Circular 230 against him.

**B. Procedural History**

Plaintiffs James Sexton and Esquire Group (Plaintiffs) filed their Complaint against Defendant Hawkins on May 21, 2013. ECF No. 1.

Defendant filed a Motion to Dismiss on August 16, 2013. ECF No. 20. The Court held oral argument on this Motion on September 18, 2014. ECF No. 37. The Court later denied the Motion. ECF No. 42. Defendant appealed this decision on December 15, 2014. ECF No. 46. The parties later voluntarily dismissed this appeal. ECF No. 71.

Plaintiffs filed a Motion for Judgment on the Pleadings on November 9, 2015. ECF No. 56. Defendant filed a Motion for Summary Judgment on December 23, 2015. ECF No. 64.

### III. LEGAL STANDARD

#### A. Judgment on the Pleadings

Fed. R. Civ. P. 12 (c) provides that "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings. "'A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law.'" United States v. Teng Jiao Zhou, 815 F.3d 639, 642 (9th Cir. 2016) (quoting Fajardo v. Cty. of L.A., 179 F.3d 698, 699 (9th Cir.1999)). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009).

#### B. Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

### IV. ANALYSIS

Because the briefs regarding the parties' Motions for Judgment on the Pleadings and Summary Judgment concern the same legal questions, the Court addresses them simultaneously below.

#### A. Legal Standard For IRS Jurisdiction Over Tax Preparers or Advisors

- 4 -

Plaintiffs argue that, consistent with the analysis of a recent D.C. Circuit Court case called Loving v. I.R.S., the authority of the I.R.S. does not extend to individuals who are not "representatives of persons before the [I.R.S.]", and that therefore the I.R.S. lacks jurisdiction over Plaintiff. 742 F.3d 1013, 1015 (D.C. Cir. 2014). In Loving v. I.R.S., the D.C. Circuit analyzed, 31 U.S.C. § 330 the statute that Defendants in this case rely on for authority to investigate and regulate Sexton. Id. "Section 330 of Title 31 authorizes the Secretary of the Treasury—and by extension, the IRS, a subordinate agency within the Treasury Department—to 'regulate the practice of representatives of persons before the Department of the Treasury.' 31 U.S.C. § 330(a)(1)." Id. The Circuit Court addressed the question of "whether the IRS's authority to 'regulate the practice of representatives of persons before the Department of the Treasury' encompasses authority to regulate tax-return preparers like Sexton. 31 U.S.C. § 330(a)(1)." Id. at 1016. The Circuit Court answered in the negative.

In so doing, the D.C. Circuit found that tax preparers are not representatives under Section 330: "[i]n light of the way the Code treats tax preparation, it would be quite wrong to say that a tax-return preparer 'represents' the taxpayer in any meaningful legal sense. In short, the statute's use of the term 'representative' excludes tax-return preparers." Id. at 1016-17. The D.C. Circuit further found that preparing and signing tax returns are not considered as practice before the Department: "[a]lthough the exact scope of 'practice before' a court or agency varies depending on the context, *to 'practice before' a court or agency ordinarily refers to practice during an investigation, adversarial hearing, or other adjudicative proceeding.*" Id. at 1018 (emphasis added).

This Court agrees with the analysis and holding of the D.C. Circuit in Loving as to the statute and its scope in relation to practitioners versus tax-preparers. The Court adopts this legal analysis and reasoning for this case.

Treasury Department Circular No. 230 (Regulations Governing Practice before the Internal Revenue Service), 31 C.F.R. Subtitle A, Part 10 implements the authority Congress gave the Secretary of the Treasury in 31 U.S.C. § 330 to regulate practice before the IRS. Circular 230 "contains rules governing the recognition of attorneys, certified public accountants, enrolled

agents, enrolled retirement plan agents, registered tax return preparers, and other persons *representing taxpayers before* the Internal Revenue Service. Subpart A of this part sets forth rules relating to the authority to practice before the Internal Revenue Service; subpart B of this part describes the duties and restrictions relating to such practice; subpart C of this part describes the sanctions for violating the regulations; subpart D of this part contains the rules applicable to disciplinary proceedings; and subpart E of this part contains general provisions relating to the availability of official records." 31 C.F.R. § 10.0 (emphasis added).

### B. Discussion

The Court finds that Plaintiff is not subject to the I.R.S.'s regulatory authority under Section 330. The analysis and holding in <u>Loving</u> apply with equal force to this case.

Defendant makes two arguments. First, Defendant argues that 31 U.S.C. § 330 ("Section 330") extends to tax professionals who are not authorized to practice before the IRS because they are suspended from practice due to misconduct, yet offer services within the scope of the statute and its implementing regulations. Second, Defendant argues that § 330 extends to tax professionals who offer written tax advice within the meaning of subsection (d), regardless of whether they represent clients in a typical tax controversy before the IRS. The Court does not find either of these arguments persuasive.

#### *1. Suspended Representatives[2] Are Not Covered under Section 330*

The Defendant offers several bases for its general proposition that Section 330 creates an inherent jurisdiction or authority over former practitioners before the IRS. The Court rejects all of these arguments seeking to create this inherent authority.

First, Defendant argues that 31 U.S.C. § 330 ("Section 330") extends to individuals who have previously been authorized to practice before the IRS but whose authority to practice before the IRS has been suspended but not completely terminated. Defendant concedes that neither

---

[2] Defendants use the term "practitioner" based on its use in 31 C.F.R. § 10.51(a)(18), which precludes "willfully representing a taxpayer before an officer or employee of the IRS unless the practitioner is authorized to do so…". 31 C.F.R. § 10 interprets the authority conferred to the Secretary of Treasury in 31 U.S.C. § 330 to regulate "representatives of persons before the [I.R.S.]". Therefore, the Court understands the terms "practitioner" and "representative" to be interchangeable for purposes of this analysis, and will use the term "representative" in its discussion of 31 U.S.C. §330, and "practitioner" in its discussion of 31 C.F.R. § 10.51, for the sake of clarity.

- 6 -

Section 330, nor the regulations promulgated thereunder in 31 C.F.R. Part 10 (Circular 230), expressly provide that OPR's regulatory authority extends to persons who are suspended from practice before the IRS. To the extent that Circular 230 prevents suspended lawyers from practice, however, Defendant argues that "[a]lthough Sexton is a disbarred lawyer, for Circular 230 purposes he is [also] a suspended practitioner." Defendant then cites to a general principle that a professional licensing or disciplinary body retains authority over a suspended member to investigate and act on alleged violations of the suspension or violations of law or rules of professional conduct while suspended. However, Defendant's only authority for this proposition are non-binding state court cases, namely Kirven v. Secretary of the Board of Commissioners on Grievances and Discipline, 246 S.E.2d 857, 858 (S.C. 1978) ("based on his assumption that an attorney who has been indefinitely suspended is not an attorney and thus is not subject to this Court's disciplinary authority…[t]his assumption is false."). The Court is unaware of any binding authority or federal case law holding that a disbarred lawyer is the equivalent of a suspended representative under Section 330.[3] The Court rejects this argument.

Second, Defendant argues that OPR has inherent jurisdiction over unauthorized practice by either (i) those who lack the requisite credentials to practice (because they are unlicensed as an attorney or CPA or unenrolled by the IRS as an enrolled agent, enrolled actuary, or enrolled retirement plan agent), or (ii) those who are suspended from practice for violating the regulations governing practice. However, Defendant cites to no authority for the OPR's "inherent jurisdiction." The Court is unaware of any case law or regulations that stand for this proposition. The Court declines to create such an expansive 'inherent jurisdiction' for the IRS.

Third, Defendant argues that regulations interpreting Section 330 prohibit representing a taxpayer before an officer or employee of the IRS unless authorized to do so. 31 C.F.R. §10.51(a)(18). This is true. However, 31 C.F.R. §10.51(a)(18) refers to Section 10.50, which prohibits practitioners from practice before the IRS. The Court in Loving dealt with this exact language, and deemed that the IRS's statutory authority to "regulate the practice of representatives

---

[3] Kirven is also unavailing. Kirven involved the jurisdiction of the state agency's authority *to investigate* an allegation of misconduct, but not whether the particular individual was subject to the agency's authority such that he would be legally required to respond to a complaint or request for documents. 246 S.E.2d at 858.

- 7 -

of persons before the Department of Treasury" does not encompass authority to regulate tax-return preparers, and therefore that IRS regulations interpreting § 330 this way were overbroad. Loving, 742 F.3d at 1017 ("Put simply, tax-return preparers are not agents. They do not possess legal authority to act on the taxpayer's behalf… 'representation' of a taxpayer before the IRS requires formally obtaining the taxpayer's power of attorney, something tax-return preparers do not typically obtain when preparing returns. Moreover, because a tax-return preparer is not a representative, the taxpayer ordinarily must still sign and submit the return in his or her own name…"). This Court agrees with Loving's analysis of the statutory text and context of Section 330, and finds them equally applicable here. In this case, Sexton's tax preparation activities are insufficient to grant OPR authority to regulate his business practice under Section 330. There is no evidence in this record that Sexton or Esquire "practiced" before the IRS or represented taxpayers before the IRS in any adversarial proceeding during the period in question in this case.

Fourth, Defendant argues that the Secretary has broad discretion under Section 330 including the "inherent power" to investigate and sanction those who engage in practice without authority to do so or who engage in practice contrary to the rules of practice. Defendant argues that because Section 330(b) gives the Secretary the power to suspend an individual from practice, the reasonable presumption is that Congress intended for oversight to continue after suspension given that the statute also includes the more severe sanction of disbarment, as well as the alternative sanction of a monetary penalty, either or both of which are potentially available in the case of practitioners who essentially disregard a censure or suspension. This presumption, however, does not logically follow from the statute. The fact that the statute allows for varying levels of discipline supports only the inference that the Secretary has the authority to impose different sanctions based upon the severity of the violations of the practitioner.[4] It does not support a presumption or inference that the Secretary would have the authority to regulate the provision of certain types of professional services, such as tax preparation, which he would otherwise not be able to regulate but for the fact that the offeror of such services had previously been a practitioner

---

[4] The Court does not reach in this decision the question of whether the IRS could choose to "disbar" Sexton or Esquire under Section 330 based upon an IRS determination that Sexton or Esquire have not adequately prepared tax forms.

before the IRS. An individual or entity does not subject himself to indefinite and undefined oversight by the IRS based upon suspension. Indeed, this would result in suspension becoming potentially a more severe penalty than disbarment. In any event, the Court does not find that suspension, as argued by Defendant, allows for continued or indefinite regulation of previous practitioners in their subsequent employment as tax preparers.

Fifth, Defendant argues that it has inherent authority to regulate those practicing before it. Defendant cites to Goldsmith v. U.S. Board of Tax Appeals, 270 U.S. 117 (1926), where the Court determined that "so necessary is the power and so usual is it" for an agency to regulate practitioners, that a general grant of authority to the Board of Tax Appeals necessarily included the authority to determine who was qualified to practice before it. Id. at 122. This Court reiterates here its agreement with the analysis of Loving, that the IRS does have the authority to regulate representatives or practitioners before it, but that this authority does not extend to tax preparers or suspended former practitioners who are not tax preparers. The Court is unpersuaded that Defendant has such inherent authority as it relates to tax preparation, as it would dramatically expand the IRS's scope of regulatory authority, as "the IRS would be empowered for the first time to regulate hundreds of thousands of individuals in the multi-billion dollar tax-preparation industry. Yet nothing in the statute's text or the legislative record contemplates that vast expansion of the IRS's authority." Loving, 742 F.3d at 1021. And the fact that an individual was formerly a practitioner before the IRS cannot expand IRS jurisdiction into an area where no jurisdiction previously existed.

Thus, the Court rejects Defendant's first general argument that IRS' authority and jurisdiction extends to tax professionals who are not authorized to practice before the IRS because they are suspended from practice due to misconduct.

> ***2. Section 330 Does Not Extend to Tax Professionals Offering Written Advice Regardless of Whether They Represent Clients in a Tax Controversy Before the IRS***

Defendant argues that § 330 extends to tax professionals who offer written tax advice within the meaning of subsection (e), regardless of whether they represent clients in a typical tax controversy before the IRS.

Defendant argues that OPR asserted jurisdiction over Sexton because of an allegation that he had been practicing before the IRS, not just preparing tax returns. Defendant states that the definition of "practice before the Internal Revenue Service" in §10.2(a)(4) in pertinent part provides that it includes "rendering written advice with respect to any entity, transaction, plan or arrangement, or other plan or arrangement having a potential for tax avoidance or evasion." In support of its argument, Defendant cites to pre-<u>Loving</u> decisions by administrative law judges (ALJs). In one case, an ALJ found that Section 330(d) applies to practitioners that did not represent persons in cases before the IRS within the meaning of <u>Loving</u>. <u>Director, Office of Professional Responsibility v. Settles</u>, Complaint No. 2004-11. Similarly, in 2009, an ALJ held that, under the 1996 version of Circular 230, a tax attorney had engaged in practice before the IRS when he issued a written legal opinion to a client in connection with a proposed tax-motivated lease transaction. <u>Director, Office of Professional Responsibility v. Sykes</u>, OPR Complaint No. 2006-1 (Decision of Jan. 29, 2009). The Court finds that these ALJ decisions are not persuasive or controlling.

Defendant also attempts to distinguish <u>Loving</u> from the instant case arguing that <u>Loving</u> did not discuss Section 330(e) specifically, but rather addressed different subsections within Section 330. Specifically, Defendant argues that "[t]he Loving plaintiffs were in the business of preparing tax returns. They were not traditional Circular 230 practitioners, and they were not in the business of authoring written tax opinions for corporate clients or high net-worth individuals." The Court finds <u>Loving</u>'s narrow interpretation of Section 330 to be applicable in this case. The <u>Loving</u> court's extensive analysis of Section 330 and its statutory history and context supports the

narrow reading of the statute adopted in this order. See 742 F.3d at 1016-22 (reviewing the various reasons based upon statutory interpretation that support a narrow reading of the statute).

However, even assuming that Loving did not impact Section 330(e), which the Defendant appears to implicitly argue is a "catch all" section, the Court finds that Section 330(e) does not apply to the facts in this case. Defendant concedes Sexton is permitted to prepare taxes under the scope of his suspension, but argues that he may not offer written advice regardless of whether there is a typical tax controversy before the IRS under Section 330(e). The Court does not find that the plain language of Section 330(e) supports this interpretation. 31 U.S.C. § 330(e) states that "Nothing in this section or in any other provision of law shall be construed to limit the authority of the Secretary of the Treasury to impose standards applicable to the rendering of written advice with respect to any entity, transaction plan or arrangement, or other plan or arrangement, which is of a type which the Secretary determines as having a potential for tax avoidance or evasion." At most, it allows the Secretary to impose standards to the *rendering* of such advice—but does not provide a mechanism to sanction such advice, nor the offering of such advice. This is in stark contrast to the language of the statute elsewhere: "[a]fter notice and opportunity for a proceeding, the Secretary may *suspend* or *disbar* from practice before the Department, or *censure*, a representative…The Secretary may impose a *monetary penalty* on any representative described in the preceding sentence…" 31 U.S.C. § 330(c). Second, this narrow interpretation of the language is supported by the regulations promulgated by the Secretary. Section 10.2 of the regulations does not have a separate definition for "written advice" that would encompass individuals who are tax preparers but not practitioners providing such written advice. Rather, Section 10.2 references "written advice" only in the definition of "practice." 31 C.F.R §10.2. This Court has already found, consistent with the holding in Loving, that "to 'practice before' a court or agency ordinarily refers

to practice during an investigation, adversarial hearing, or other adjudicative proceeding" before the IRS and that this does not encompass the work of tax preparers. Id. at 1018. The Court thus finds that the plain language of the statute does not support the expansive reading suggested by the Defendant.

The Court additionally finds that even if Loving did not explicitly identify Section 330(e) as part of its analysis, the Loving court's statutory analysis as to the reach and limitations of Section 330 apply with equal force to Subsection (e). For example, this Court also rejects the Defendant's interpretation in this case since it would, as the court noted in Loving, render superfluous the statutory scheme that Congress has enacted separately for the regulation of tax preparers. See, e.g., 26 U.S.C. §§6694, 6695 and 6713 (outlining tax preparer responsibilities and civil penalties related to misconduct by tax preparers). Congress has not indicated any intention to supplant this regulatory scheme. Indeed, Congress continues to revise and amend these regulatory statutes related to tax preparers even within the time frame of the litigation of this case. See, e.g., Pub. Law No. 114-113, §§ 207(a) and 210(a), 129 Stat. 3085(2015) (revising Sections 6694 and 6695). The existence of a separately enacted regulatory scheme directly related to tax preparers negates the Defendant's argument that Congress intended Section 330 to authorize the IRS to separately regulate tax preparers.

Further, the Defendant points to no authority to support its argument that the written advice does not need to be given in the context of an actual proceeding or investigation before the IRS, i.e., practicing before the IRS. As this Court has noted such practice necessarily involves representation in the context of a proceeding for purposes of § 330. And in this case, it must be emphasized that based on the undisputed factual record in this case, Sexton merely *offered* to send

written advice to Kern, but did not in fact render any such advice, since Kern fired him after finding out about his disbarment.

In short, the Court finds that in this case, Section 330(e) does not extend to Sexton, a tax preparer and disbarred attorney, who offered to write a written memorandum to a taxpayer about the manner in which she may want to file her taxes.

Therefore, the Court grants Plaintiff's Motion for Judgment on the Pleadings (ECF No. 56), and denies Defendant's Motion for Summary Judgment (ECF No. 64).

### C. Permanent Injunction

Plaintiff seeks both declaratory and injunctive relief, both of which the Court deems appropriate here. Regarding declaratory relief, Plaintiff seeks declaratory judgment that: 1) Sexton is not a practitioner as defined by federal law and that Defendants lack statutory authority to enact, promulgate or enforce demands or authority over him and/or his employer Esquire as a result of Sexton's activities; and 2) Defendants and their agents are prohibited from regulating the providing of tax advice generally, except as specifically provided by statute and conferred upon them by Congress. Regarding injunctive relief, Plaintiff asks this Court to permanently enjoin the IRS from seeking to enforce Section 10.20 of Circular 230 against both Sexton and his company Esquire and requiring them to provide documents and information to Defendants upon demand.

"The Declaratory Judgment Act provides that, '[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.' 28 U.S.C. § 2201(a)." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126 (2007). The Court employs a four-factor test to determine whether to issue an injunction, examining whether (1) the plaintiff has suffered an irreparable injury; (2) "remedies available at law, such as monetary

damages, are inadequate to compensate for that injury"; (3) "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) a permanent injunction would not disserve the public interest. eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

Sexton has satisfied all four prongs of this test. While Sexton's injuries are largely financial, which alone would not support a finding of irreparable harm, See Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991), Sexton also argues that Defendant's actions, if they were to continue, would result in the effective termination of his vocation. As in Loving, the Court finds that this constitutes irreparable injury. Loving v. I.R.S., 917 F. Supp. 2d 67, 81 (D.D.C. 2013), aff'd, 742 F.3d 1013 (D.C. Cir. 2014) ("Plaintiffs declare that they will likely close their tax businesses if forced to comply with the new Rule, which the Court concludes would be an irreparable injury."); See also Nat'l Mining Ass'n v. Army Corps of Eng'rs, 145 F.3d 1399, 1408–09 (D.C.Cir.1998) ("Money damages were never sought in this action, and even if the government were somehow found to have waived its sovereign immunity against damage actions, it is hard to see the relevance of such remedies in the context of a pre-enforcement challenge to agency regulations. The plaintiffs did seek (and obtain) a declaration of the [challenged] Rule's invalidity, but this brand of relief is itself more equitable than legal in nature."). The Court further finds that Sexton lacks an adequate remedy at law regarding his ability to challenge the OPR's actions. The Court also concludes that the balance of hardships tips in Sexton's favor, as the IRS's actions were not permissible under Section 330 and Plaintiff has suffered financial loss. Finally, a permanent injunction would serve the public interest because of the inapplicability of Section 330 to tax preparers such as Sexton.

The Court will therefore grant Sexton's request for permanent injunctive relief.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Judgment on the Pleadings is granted. ECF No. 56. The Court issues the following declaratory judgement ruling and findings:

1. Sexton is not currently a practitioner as defined by Treasury Department Circular No. 230 (Regulations Governing Practice before the Internal Revenue Service), 31 C.F.R. Subtitle A, Part 10, implementing 31 U.S.C. § 330. Defendants lack statutory authority to enact, promulgate or enforce demands or authority over him and/or his employer Esquire as a result of Sexton's activities regarding tax preparation or consultation as described in this case.

2. Defendants and their agents are prohibited from regulating the provision of tax advice by Sexton or Esquire consistent with this Order.

IT IS FURTHER ORDERED that Defendants or their agents are permanently enjoined from seeking to assert authority or jurisdiction over Sexton or Esquire regarding his/their tax preparation activities, pursuant to Treasury Department Circular No. 230 or 31 U.S.C. § 330.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is denied. ECF No. 64.

**DATED:** March 17, 2017.

_____
RICHARD F. BOULWARE, II
United States District Judge